UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY ROMERO, | CASE NO. 1:11-cv-0935-LJO-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM |
| v. | (ECF No. 1) |
| JOHN N. KATAVICH, et. al., | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |
| Defendants. | |

Plaintiff Danny Romero ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff initiated this action on June 9, 2011. (ECF No. 1.) No other parties have appeared. Plaintiff's Complaint is now before the Court for screening.

For the reasons stated below, the Court finds that Plaintiff fails to state a cognizable claim. He will be given leave to amend.

I. **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from

such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ____ U.S. ____, ____, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

## II.     PLAINTIFF'S CLAIMS

Plaintiff is currently incarcerated at Centinela State Prison. He was housed at Wasco State Prison ("WSP") when the events at issue in the Complaint occurred. Plaintiff alleges he suffered harsh and restrictive confinement and inadequate medical care in violation of the Eighth Amendment; was denied Fourteenth Amendment due process rights; and was retaliated against in violation of the First Amendment. Plaintiff also attributes violation of unnamed rights to a Defendant's failure to train subordinates.

Plaintiff names the following individuals as Defendants: 1) John N. Katavich, Warden or Associate Warden of WSP, 2) P.L. Vasquez, Warden/Associate Warden, 3) A. Acala, Counselor C.C.I., 4) Captain Kiebler of a facility at WSP, 5) C/O B. Salas, 6) Correctional Officer Blanco, 7) Correctional Officer Contreras, 8) Correctional Officer Rivera, 9) Correctional Officer Amacer, and 10) California Department of Corrections.

Plaintiff asks that each Defendant be held accountable for his or her actions. Plaintiff also asks that he and his loved ones be compensated for distress suffered as a

result of Defendants' actions.

Plaintiff's various allegations are brief, conclusory, and, quite frankly, seem to itemize every event at WSP, no matter how insignificant, that has caused him offense.[1]

His allegations are as follows:

1) Defendants Katavich and Vasquez, wardens at WSP, allowed their staff employees to improperly run the California Out of State Correctional Facility Program ("COCF Program"), a program for transferring inmates out of state. (Compl. at 3.) From September 2010 to April 2011, unnamed staff employees treated inmates in this program as if they had contagious diseases and denied them clothing, cleaning supplies, and access to the canteen to buy cosmetics. (Id.)

2) Defendant Acala, Plaintiff's counselor, discussed Plaintiff's personal and private information with someone other than Plaintiff in May 2011. (Compl. at 3.) Plaintiff did not consent to Defendant Acala's disclosure. Plaintiff's privacy rights were violated. (Id.)

3) Defendant Salas denied Plaintiff's medical care even though he knew Plaintiff had an appointment and needed medical attention. (Id.)

4) Defendant Blanco did not allow Plaintiff to fill out the proper forms to see a doctor for head, chest and tooth pain. (Compl. at 3.) Defendant Blanco told Plaintiff to "man up" and advised Plaintiff that if he saw the doctor, he would be "kept here longer"; Plaintiff took that as a threat. (Id.)

5) Defendant Rivera did not give Plaintiff his lunch. (Compl. at 4.) Defendant Rivera told Plaintiff that if he wished to continue to "have a Mexican/Southern, Porter/Worker" then he should not complain. (Id.) Plaintiff interpreted this as a threat.

6) Plaintiff and others were without hot water from May 12 to May 19 of 2011. (Compl. at 4.) Plaintiff asked Defendant Contreras why the hot water had been out for so

---

[1] This characterization is not meant to demean Plaintiff or his claims, but rather to remind him that not every wrong or discomfort inflicted on a person gives rise to a constitutional violation. Moreover, prisons certainly have and must have greater leeway in managing their institutions even when doing so infringes on the ususal accommodations of free society. While the Court may sympathize with Plaintiff's plight, it can only address wrongs of a genuinely constitutional nature and significance.

long. Defendant Contreras responded that correctional officers were not plumbers and could not fix the problem. (Id.) Defendant Contreras told Plaintiff to deal with it. (Id.) Only after other inmates complained did Sergeant Lopez respond. (Id.) Plaintiff believes that Defendant Contreras' response amounted to cruel and unusual punishment.

7) Defendant Amacer is a correctional officer in 4-building, A facility. (Compl. at 4.) Plaintiff asked him for a 602 form, and he questioned why Plaintiff and other inmates kept filing out 602s since they just ended up in the trash. (Id.)

8) Defendant Kiebler, the A-facility captain, on April 28, 2011, told the inmates they would be able to have visitors immediately. (Id.) However, prisoners did not have writing material or telephone access to enable them to so inform their relatives. (Id.) When the prisoners advised Defendant Kiebler of this, he told them they would receive writing material and relatives simply needed to show up at the prison without appointments. (Id.) Plaintiff's wife, then eight months pregnant, came to the prison but was not allowed to see Plaintiff. (Id.) She became so distressed that she had to see her doctor. (Id.) She also advised Plaintiff their daughter had been crying because she could not see her father. (Id.) Plaintiff's wife blamed him for not being able to have visitors because he was housed in the COCF Program. (Compl. at 5.) The conditions in the COCF Program are inhuman. Inmates are not allowed to have cleaning supplies for long periods of time and are only allowed to change clothing once a week. Defendant Kiebler could easily have obtained these things for the inmates just as he obtained writing materials for them. (Id.)

9) Defendant California Department of Corrections allowed their employees to treat its inmates improperly even though it had the responsibility to train them.

### III. **ANALYSIS**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v.

Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

### A. Federal Rule of Civil Procedure 18(a)

Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The fact that claims are premised on the same type of constitutional violation(s) (i.e. deliberate indifference) against multiple defendants does not make them factually related. Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.

The First Amended Complaint contains a number of unrelated claims in violation of rule 18. The Court identifies seven distinct groupings of unrelated claims in Plaintiff's

allegations: (1) Eighth Amendment claims against Defendants Katavich, Vasquez, Contreras, and Kiebler for harsh and restrictive conditions of confinement; (2) Fourteenth Amendment due process claim against Defendants Acala for disclosure of Plaintiff's private information; (3) Fourteenth Amendment due process claim against Defendant Amacer for prison grievance system involvement in or knowledge of; (4) Eighth Amendment claims against Defendant Salas for inadequate medical care; (5) Eighth Amendment claim for inadequate medical care and First Amendment claims for retaliation against Defendant Blanco, (6) First Amendment retaliation claim against Defendant Rivera; (7) failure to train claim against the California Department of Corrections.

The Court will review and discuss all of Plaintiff's claims and the law applicable to them so that Plaintiff might evaluate which, if any, he feels may be and should be pursued here and which, if any, may be and should be pursued in different actions.[2]

Plaintiff must file a separate complaint for each unrelated claim against different defendants at different facilities. If he does not, all unrelated claims will be subject to dismissal.

## B.   Eighth Amendment - Conditions of Confinement

Plaintiff alleges that Defendants Katavich and Vasquez, wardens at WSP, allowed unnamed individuals to run the COCF Program improperly, and denied Plaintiff clothing, cleaning supplies, and access to the canteen for cleaning supplies. Plaintiff also alleges that Defendant Contreras denied Plaintiff access to hot water for seven days, from May 12 to May 19 of 2011. Lastly, Plaintiff alleges that Defendant Kiebler, the A-facility captain, denied Plaintiff his visitation rights and that he failed to provide Plaintiff with clothing and cleaning supplies for long periods of time.

---

[2] Plaintiff is reminded that filing an action based on claims that are not cognizable and/or frivolous may adversely affect his ability to file actions in forma pauperis in the future. 28 U.S.C. § 1915(g).

### 1. Supervisory Liability

As an initial issue, Plaintiff has not stated a claim against Defendants Katavich, Vasquez, or Kiebler for denying him access to necessities because he brings these claims against them in their supervisory capacities.

Under section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948–49.

Plaintiff has not alleged facts demonstrating that Defendants Katavich, Vasquez, and Kiebler were aware that Plaintiff was being denied clothing, cleaning supplies, or cosmetics. Plaintiff has not alleged that any of these Defendants personally acted to violate his rights.

Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect. In his amended complaint, Plaintiff needs to specifically link each of these Defendants to a violation of his rights.

### 2. Conditions of Confinement

As currently pled, Plaintiff only alleges that Defendant Contreras was directly aware of Plaintiff's allegedly harsh confinement conditions. The necessary legal elements of such a claim are analyzed below. If Plaintiff wishes to try to assert similar claims against

Defendants Katavich, Vasquez, and Kiebler, the same standards and analysis apply.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31, (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

"To sustain an Eighth Amendment claim, the plaintiff must prove a denial of 'the minimal civilized measure of life's necessities,' occurring through 'deliberate indifference' by prison personnel or officers." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981), Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). However, temporary unconstitutional conditions of confinement do not rise to the level of constitutional violations. See Anderson v. County of Kern, 45 F.3d 1310 (9th Cir. 1995).

As noted, Plaintiff's only claim which does not defectively allege supervisory liability is against Defendant Contreras. Plaintiff alleges Defendant Contreras denied him access

1  to hot water for seven days.  He does not allege the denial was a result of deliberate
2  indifference or some more offensive motive.
3      Moreover, such a temporary and de minimis hardship does not rise to the level of
4  a constitutional violation.  Although the Eighth Amendment protects against cruel and
5  unusual punishment, this does not mean that federal courts can or should interfere
6  whenever prisoners are inconvenienced or suffer de minimis injuries.  See, e.g., Hudson
7  v. McMillian, 503 U.S. 1, 9-10 (1992) (Eighth Amendment excludes from constitutional
8  recognition de minimis uses of force); Anderson v. County of Kern, 45 F.3d 1310, 1314-15
9  (9th Cir. 1995) (temporary placement in safety cell that was dirty and smelled bad did not
10 constitute infliction of pain); Hernandez v. Denton, 861 F.2d 1421, 1424 (9th Cir. 1988)
11 (allegation that inmate slept without mattress for one night is insufficient to state 8th
12 Amendment violation and no amendment can alter that deficiency), judgment vacated on
13 other grounds, 493 U.S. 801 (1989); Holloway v. Gunnell, 685 F.2d 150 (5th Cir. 1985) (no
14 claim stated where prisoner forced to spend two days in hot dirty cell with no water).
15     If Defendants Katavich, Vasquez, and Kiebler were personally aware of the alleged
16 deprivations, not just supervising others who were aware, a claim against them could be
17 of greater constitutional concern because the alleged deprivations attributed to them
18 continued longer and were more severe than hot water deprivation.  If Plaintiff wishes to
19 try to proceed against Defendants Katavich, Vasquez, and Kiebler, he must show how they
20 personally participated in or were deliberately indifferent to these deprivations.
21     At this time, Plaintiff has failed to state a claim against these Defendants for denial
22 of necessities under the Eighth Amendment.  If Plaintiff chooses to file an amended
23 complaint, he must provide more information to enable the Court to determine their role
24 and to determine if the deprivations reached a constitutionally prohibited level. He should
25 explain how long they continued, how they affected him, and how they reached the level
26 of denial of life's necessities.  Plaintiff must also explain how these Defendants had a
27 "sufficiently culpable mind" and were directly aware of the deprivations and yet were
28

deliberately indifferent to them.

3.      Visitation Rights

Plaintiff also alleges that Defendant Kiebler wrongfully denied Plaintiff his visitation rights.

Although being denied visits from close family members may sound cruel, prisoners do not have a due process or Eighth Amendment constitutional right to visitation rights. See generally Ky. Dep't of Corr. v. Thompson, 490 U.S. 454 (1989) (considering the denial of visitation rights under the Due Process Clause of the Fourteenth Amendment); Keenan v. Hall, 83 F.3d 1083 (9th Cir. 1996) (considering the denial of visitation rights under the Eight Amendment). "[T]here is no constitutional right of 'access to a particular visitor.'" Keenan, 83 F.3d at 1092 (quoting Ky. Dep't of Corr., 490 U.S. at 460–61).

Plaintiff has failed to state a claim against Defendant Keibler in this regard. Because the law does not recognize such a claim, amendment would be futile and Plaintiff will not be given leave to amend this claim.

## C.     Due Process - Right to Privacy

Plaintiff has alleged that Defendant Acala, Plaintiff's counselor, discussed Plaintiff's information with a third party, without a waiver from Plaintiff.

The Supreme Court recognizes a constitutional right to privacy regarding "the individual interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599 (1977). In Whalen, the Court did not define the boundaries of this right, or hold that there is a constitutional right to privacy for medical records, however. Rather, it held that, insofar as there is such a right, it was not impacted by a New York law requiring physicians to disclose identifying information for individuals prescribed certain controlled substances. Id. at 605. The Supreme Court's most recent discussion on the issue; NASA v. Nelson, ___ U.S. ___, 131 S.Ct. 746 (2011), explicitly "assume[d], without deciding" that the Constitution protects such a right, but expressly declined to consider its extent. Id. at 751. The Court noted that it had announced that such a right existed in Whalen, but had

1  said virtually nothing on the matter in the more than 30 years since. See id. at 751, 756
2  (citing Whalen, 429 U.S. at 599–600 (1977), and Nixon v. Admin. of Gen. Servs., 433 U.S.
3  425, 457 (1977)). Declining to articulate the scope of such a right, the Court ruled that the
4  plaintiffs' claims for invasion of privacy failed on other grounds. Id. at 762–64.

5       Courts have generally found that prisoners' rights to informational privacy in their
6  medical records, if any, arise under the Fourteenth Amendment. See Seaton v. Mayberg,
7  610 F.3d 530, 537–39 (9th Cir. 2010) cert. denied, ___ U.S. ___, 131 S.Ct. 1534 (2011)
8  (recognizing an inmate's limited right to informational privacy of medical records under the
9  Fourteenth rather than the Fourth Amendment); see also Birks v. Terhune, 398 Fed. App'x
10 308, 309 (9th Cir .2010) (affirming dismissal of prisoner's claim that a prison official
11 breached a duty of medical confidentiality, stating "prisoner's privacy interest in medical
12 treatment information yields to prisons' interest in maintaining security") (citing Seaton, 610
13 F.3d at 534–35); Powell v. Schriver, 175 F.3d 107 (2d Cir. 1999).  The Court therefore
14 construes Plaintiff's claim against Defendant Acala as raised under the Fourteenth
15 Amendment.

16      In Seaton, the court held that an inmate had no privacy right in preventing the
17 disclosure of his mental health records to the district attorney's office, when the State
18 sought the inmate's commitment under California's Sexually Violent Predator Act. 610 F.3d
19 at 541.  The court stated that, to the extent an inmate's medical records are disclosed
20 "while he [is] in prison serving his sentence" and the disclosure was "for a penological
21 purpose relating to his imprisonment," any "privacy right he has may be overridden for
22 legitimate penological reasons." Id. Examples of such "substantial" penological interests
23 are a prison's need "to protect prison staff and other prisoners from communicable
24 diseases and violence, and to manage rehabilitative efforts." Id. at 535.

25      Plaintiff fails to state a claim against Defendant Acala for a violation for his privacy
26 right under the Fourteenth Amendment.  Although it appears that prisoners are entitled to
27 a certain amount of privacy in their medical records, Plaintiff has failed to provide enough
28

information for the Court to determine whether he has stated a claim for a violation of this right. Plaintiff does not explain what kind of counselor Defendant Acala happens to be, what information was disclosed, to whom it was disclosed, how Plaintiff is aware it was disclosed, and whether or not Defendant Acala had a legitimate penological reason for disclosing the information when he or she disclosed it. Plaintiff will be given leave to amend this claim.

### D. Inadequate Medical Care

Plaintiff alleges that he suffered from inadequate medical care because Defendant Salas turned Plaintiff away from the medical office even though he or she knew Plaintiff had an appointment. Plaintiff also alleges he suffered inadequate medical care when Defendant Blanco would not allow him to fill out forms to see a doctor and told him to "man up" rather than see a doctor.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference

could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff has not pled a serious medical condition. He has not explained what kind of medical ailment he was suffering from. He does not say when he was denied treatment by Defendant Salas. He does not say if he received any treatment when he interacted with Defendant Blanco. Plaintiff does not explain the outcome of either incident. If Plaintiff chooses to amend, he must fully explain what medical ailment he was suffering from during both incidents, when they occurred, and what treatment, if any, he received.

Plaintiff also has not pled the second element of a claim for inadequate medical care. He only alleges that Defendants Salas and Blanco served as barriers to adequate medical care. He does not say if he informed these Defendants of his ailments, or if they were aware that preventing him from seeing a doctor created a risk of a substantial harm to Plaintiff.

Plaintiff has failed to state claim for inadequate medical care under the Eighth Amendment, and will be given leave to amend this claim. In his amended complaint, Plaintiff must properly allege facts showing that he had a serious medical condition and if and how any individual acted in a way that demonstrated deliberate indifference to it.

### E.   Claims Against CDCR

Plaintiff alleges that Defendant California Department of Corrections ("CDCR") violated his constitutional rights by failing to propery train their staff.

However, the Eleventh Amendment prohibits suits against state agencies. See Natural Res. Def. Council v. California Dep't of Transp., 96 F.3d 420, 421 (9th Cir. 1996); Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th 1991); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. Cir. 1989) (concluding that Nevada Department of

Prisons was a state agency entitled to Eleventh Amendment immunity); Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1989). Defendant CDCR is a state agency, and as a state agency, it is entitled to Eleventh Amendment immunity from suit. Because this Defendant is immune from suit, Plaintiff cannot recover from it.

If Plaintiff chooses to file an amended complaint, he should omit CDCR as a Defendant.

### E.   Retaliation Claim

It appears Plaintiff is claiming that Defendants Blanco and Rivera retaliated against him for pursuing his constitutional rights. He alleges that Defendant Rivera threatened to take away Hispanic inmates' right to have a designated porter-worker position if Plaintiff complained about not receiving lunch on a certain day. Plaintiff also alleges that Defendant Blanco threatened to keep him in a certain location longer if Plaintiff tried to see a doctor on a certain date.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff described the adverse actions as Defendant Blanco threatening to detain him and Defendant Rivera threatening to take away a job allocation. Plaintiff does not explain where or why Defendant Blanco allegedly threatened him or what Defendant Rivera threatened Plaintiff with. The Court cannot determine if the acts constituted an adverse action

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's

conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"). Plaintiff relies on circumstantial evidence to plead that these Defendants took adverse actions as a result of his pursuing a protected conduct. Plaintiff satisfies this prong since Defendants took their allegedly adverse actions against Plaintiff at the same time as he was trying to obtain medical services and when he was trying to complain about not receiving his lunch.

Filing a grievance is protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights legal action is also protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). Plaintiff has not alleged that he was engaged in conduct that was protected under the First Amendment. He simply says he was pursuing medical treatment when Defendant Blanco allegedly threatened him; that is not protected conduct under the First Amendment. As to Defendant Rivera, a negative response to complaints about lack of lunch does not constitute protected conduct under the First Amendment for retaliation purposes. Plaintiff has not satisfied this prong for either Defendant.

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity...." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300). Plaintiff has

failed to satisfy the fourth prong because the actions he has alleged so far appear to be innocuous and would not chill a person of ordinary firmness from future First Amendment activities.

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. Though this is not a high burden, see id. (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry), Plaintiff has not alleged facts to show that Defendants Blanco or Rivera had no legitimate penological motivation for their actions. Plaintiff has failed to describe the circumstances of the events at issue in enough detail for the Court to determine whether there was a legitimate penological objective.  The Court cannot determine if Plaintiff has satisfied the fifth prong of a retaliation claim.

Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his retaliation claim, the Court finds that he has failed to state a claim upon which relief could be granted.  Plaintiff will be given leave to amend this claim and is required to show how all five prongs required for a retaliation claim have been met.

**F.    Due Process - Grievance Process**

Plaintiff alleges that Defendant Amacer questioned why Plaintiff and other inmates continued to file 602s which ended up in the trash.

1.    Linkage Requirement

Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).   The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

The statute clearly requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 129 S.Ct. at 1948. Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions. Id. at 1948. In other words, to state a claim for relief under § 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff has not linked Defendant Amacer to any affirmative act or omission that could constitute a violation of Plaintiff's federal rights. Plaintiff only alleges that Defendant Amacer informed him the prison grievance process was futile. Such advice whether right or wrong or even if motivated by ill will, does violate a constitutional rights. If Plaintiff chooses to file an amended complaint, he must explain what action Defendant Amacer took that violated Plaintiff's rights and apply the standards below to determine if it would even be possible to state a claim against Defendant Amacer .

### 2. Due Process Analysis

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

In Mann v. Adams, 855 F.2d 639 (9th Cir. 1988), the Ninth Circuit held that a prisoner does not have a claim of entitlement to a grievance procedure. 855 F.2d at 640.

1  This was reiterated in Ramirez v. Galarza, 334 F.3d 850 (9th Cir. 2003), when the Ninth
2  Circuit observed that inmates do not have a separate constitutional entitlement to a
3  grievance procedure. Thus, the case law is clear that Plaintiff is not entitled, as a matter
4  of federal law, to a particular grievance procedure.

5  Plaintiff has a First Amendment right to file prison grievances but does not have a
6  right to any particular response. Johnson v. Subia, 20010 WL 3767732, *2 n. 3 (E.D. Cal.
7  Sept. 22, 2010).

8  Plaintiff has not alleged whether or not he denied the opportunity to file his
9  grievances. If Plaintiff chooses to file an amended complaint, he should explain truthfully
10  whether or not he was given an opportunity to file grievances.

## IV. CONCLUSION AND ORDER

12  Plaintiff's Complaint fails to state a claim upon which relief may be granted under
13  § 1983. The Court will provide Plaintiff with the opportunity to amend to cure the
14  deficiencies in his claim. Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-
15  49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated
16  claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no
17  "buckshot" complaints).

18  Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state
19  what each named defendant did that led to the deprivation of Plaintiff's constitutional rights,
20  Iqbal, S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be
21  [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at
22  555 (citations omitted).

23  Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana,
24  Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir.
25  1987), and it must be "complete in itself without reference to the prior or superceded
26  pleading," Local Rule 220. Therefore, "[a]ll causes of action alleged in an original
27  complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at

567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint, filed June 9, 2011, is dismissed for failure to state a claim upon which relief may be granted under § 1983;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and
4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated: February 14, 2012        /s/ *Michael J. Seng*
ci4d6                           UNITED STATES MAGISTRATE JUDGE