1
2
3
4
5
6        UNITED STATES DISTRICT COURT
7            EASTERN DISTRICT OF CALIFORNIA
8
DANNY ROMERO,                      CASE NO.    1:11-cv-0935-LJO-MJS (PC)
9
10              Plaintiff,         ORDER   DISMISSING   PLAINTIFF'S
                                   COMPLAINT, WITH LEAVE TO AMEND,
11                                 FOR FAILURE TO STATE A CLAIM
       v.
12                                 (ECF No. 1)
13  JOHN N. KATAVICH, et. al.,     AMENDED   COMPLAINT   DUE   WITHIN
                                   THIRTY DAYS
14
15              Defendants.
_____/
16

17         Plaintiff Danny Romero ("Plaintiff") is a state prisoner proceeding pro se in this civil

18  rights action pursuant to 42 U.S.C. § 1983.

19         Plaintiff initiated this action on June 9, 2011.  (ECF No. 1.)  No other parties have

20  appeared.  Plaintiff's Complaint is now before the Court for screening.

21         For the reasons stated below, the Court finds that Plaintiff fails to state a cognizable

22  claim.  He  will be given leave to amend.

23  **I.    SCREENING REQUIREMENT**

24         The Court is required to screen complaints brought by prisoners seeking relief

25  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

26  § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has

27  raised claims that are legally "frivolous or malicious," that fail to state a claim upon which

28  relief may be granted, or that seek monetary relief from a defendant who is immune from

1  such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion
2  thereof, that may have been paid, the court shall dismiss the case at any time if the court
3  determines that . . . the action or appeal . . . fails to state a claim upon which relief may be
4  granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

5       A complaint must contain "a short and plain statement of the claim showing that the
6  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are
7  not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by
8  mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, ____ U.S. ____, ____, 129
9  S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
10 Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is
11 plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).
12 Facial plausibility demands more than the mere possibility that a defendant committed
13 misconduct and, while factual allegations are accepted as true, legal conclusions are not.
14 Id. at 1949-50.

15 **II.   PLAINTIFF'S CLAIMS**

16      Plaintiff is currently incarcerated at Centinela State Prison.  He was housed at
17 Wasco State Prison ("WSP") when the events at issue in the Complaint occurred.  Plaintiff
18 alleges he suffered harsh and restrictive confinement and inadequate medical care in
19 violation of the Eighth Amendment; was denied Fourteenth Amendment due process
20 rights; and was retaliated against in violation of the First Amendment.  Plaintiff also
21 attributes violation of unnamed rights to a Defendant's failure to train subordinates.

22      Plaintiff names the following individuals as Defendants: 1) John N. Katavich,
23 Warden or Associate Warden of WSP, 2) P.L. Vasquez, Warden/Associate Warden, 3) A.
24 Acala, Counselor C.C.I., 4) Captain Kiebler of a facility at WSP, 5) C/O B. Salas, 6)
25 Correctional Officer Blanco, 7) Correctional Officer Contreras, 8) Correctional Officer
26 Rivera, 9) Correctional Officer Amacer, and 10) California Department of Corrections.

27      Plaintiff asks that each Defendant be held accountable for his or her actions.
28 Plaintiff also asks that he and his loved ones be compensated for distress suffered as a

1    result of Defendants' actions.

2    Plaintiff's various allegations are brief, conclusory, and, quite frankly, seem to

3    itemize every event at WSP, no matter how insignificant, that has caused him offense.[1]

4    His allegations are as follows:

5    1) Defendants Katavich and Vasquez, wardens at WSP, allowed their staff

6    employees to improperly run the California Out of State Correctional Facility Program

7    ("COCF Program"), a program for transferring inmates out of state. (Compl. at 3.)  From

8    September 2010 to April 2011, unnamed staff employees treated inmates in this program

9    as if they had contagious diseases and denied them clothing, cleaning supplies, and

10   access to the canteen to buy cosmetics. (Id.)

11   2) Defendant Acala, Plaintiff's counselor, discussed Plaintiff's personal and private

12   information with someone other than Plaintiff in May 2011. (Compl. at 3.)  Plaintiff did not

13   consent to Defendant Acala's disclosure.  Plaintiff's privacy rights were violated.  (Id.)

14   3) Defendant Salas denied Plaintiff's medical care even though he knew Plaintiff

15   had an appointment and needed medical attention.  (Id.)

16   4) Defendant Blanco did not allow Plaintiff to fill out the proper forms to see a doctor

17   for head, chest and tooth pain. (Compl. at 3.)  Defendant Blanco told Plaintiff to "man up"

18   and advised Plaintiff that if he saw the doctor, he would be "kept here longer"; Plaintiff took

19   that as a threat.  (Id.)

20   5) Defendant Rivera did not give Plaintiff his lunch. (Compl. at 4.)  Defendant Rivera

21   told Plaintiff that if he wished to continue to "have a Mexican/Southern, Porter/Worker" then

22   he should not complain.  (Id.)  Plaintiff interpreted this as a threat.

23   6) Plaintiff and others were without hot water from May 12 to May 19 of 2011.

24   (Compl. at 4.)  Plaintiff asked Defendant Contreras why the hot water had been out for so

25

26   _____

27   [1] This characterization is not meant to demean Plaintiff or his claims, but rather to remind him that
     not every wrong or discomfort inflicted on a person gives rise to a constitutional violation. Moreover,
     prisons certainly have and must have greater leeway in managing their institutions even when doing so
28   infringes on the ususal accommodations of free society. While the Court may sympathize with Plaintiff's
     plight, it can only address wrongs of a genuinely constitutional nature and significance.

long.  Defendant Contreras responded that correctional officers were not plumbers and could not fix the problem.  (Id.)  Defendant Contreras told Plaintiff to deal with it.  (Id.)  Only after other inmates complained did Sergeant Lopez respond.  (Id.)  Plaintiff believes that Defendant Contreras' response amounted to cruel and unusual punishment.

7) Defendant Amacer is a correctional officer in 4-building, A facility.  (Compl. at 4.)  Plaintiff asked him for a 602 form, and he questioned why Plaintiff and other inmates kept filing out 602s since they just ended up in the trash.  (Id.)

8) Defendant Kiebler, the A-facility captain, on April 28, 2011, told the inmates they would be able to have visitors immediately.  (Id.)  However, prisoners did not have writing material or telephone access to enable them to so inform their relatives.  (Id.)  When the prisoners advised Defendant Kiebler of this, he told them they would receive writing material and relatives simply needed to show up at the prison without appointments.  (Id.)  Plaintiff's wife, then eight months pregnant, came to the prison but was not allowed to see Plaintiff.  (Id.)  She became so distressed that she had to see her doctor.  (Id.)  She also advised Plaintiff their daughter had been crying because she could not see her father.  (Id.)  Plaintiff's wife blamed him for not being able to have visitors because he was housed in the COCF Program.  (Compl. at 5.)  The conditions in the COCF Program are inhuman.  Inmates are not allowed to have cleaning supplies for long periods of time and are only allowed to change clothing once a week.  Defendant Kiebler could easily have obtained these things for the inmates just as he obtained writing materials for them.  (Id.)

9) Defendant California Department of Corrections allowed their employees to treat its inmates improperly even though it had the responsibility to train them.

## III.   **ANALYSIS**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  Wilder v.

Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

### A.      Federal Rule of Civil Procedure 18(a)

Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The fact that claims are premised on the same type of constitutional violation(s) (i.e. deliberate indifference) against multiple defendants does not make them factually related. Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.

The First Amended Complaint contains a number of unrelated claims in violation of rule 18.  The Court identifies seven distinct groupings of unrelated claims in Plaintiff's

allegations: (1) Eighth Amendment claims against Defendants Katavich, Vasquez, Contreras, and Kiebler for harsh and restrictive conditions of confinement; (2) Fourteenth Amendment due process claim against Defendants Acala for disclosure of Plaintiff's private information; (3) Fourteenth Amendment due process claim against Defendant Amacer for prison grievance system involvement in or knowledge of; (4) Eighth Amendment claims against Defendant Salas for inadequate medical care; (5) Eighth Amendment claim for inadequate medical care and First Amendment claims for retaliation against Defendant Blanco, (6) First Amendment retaliation claim against Defendant Rivera; (7) failure to train claim against the California Department of Corrections.

The Court will review and discuss all of Plaintiff's claims and the law applicable to them so that Plaintiff might evaluate which, if any, he feels may be and should be pursued here and which, if any, may be and should be pursued in different actions.[2]

Plaintiff must file a separate complaint for each unrelated claim against different defendants at different facilities. If he does not, all unrelated claims will be subject to dismissal.

### B.   **Eighth Amendment - Conditions of Confinement**

Plaintiff alleges that Defendants Katavich and Vasquez, wardens at WSP, allowed unnamed individuals to run the COCF Program improperly, and denied Plaintiff clothing, cleaning supplies, and access to the canteen for cleaning supplies. Plaintiff also alleges that Defendant Contreras denied Plaintiff access to hot water for seven days, from May 12 to May 19 of 2011. Lastly, Plaintiff alleges that Defendant Kiebler, the A-facility captain, denied Plaintiff his visitation rights and that he failed to provide Plaintiff with clothing and cleaning supplies for long periods of time.

---

[2] Plaintiff is reminded that filing an action based on claims that are not cognizable and/or frivolous may adversely affect his ability to file actions in forma pauperis in the future. 28 U.S.C. § 1915(g).

1.   Supervisory Liability

As an initial issue, Plaintiff has not stated a claim against Defendants Katavich, Vasquez, or Kiebler for denying him access to necessities because he brings these claims against them in their supervisory capacities.

Under section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948–49.

Plaintiff has not alleged facts demonstrating that Defendants Katavich, Vasquez, and Kiebler were aware that Plaintiff was being denied clothing, cleaning supplies, or cosmetics. Plaintiff has not alleged that any of these Defendants personally acted to violate his rights.

Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect. In his amended complaint, Plaintiff needs to specifically link each of these Defendants to a violation of his rights.

2.   Conditions of Confinement

As currently pled, Plaintiff only alleges that Defendant Contreras was directly aware of Plaintiff's allegedly harsh confinement conditions. The necessary legal elements of such a claim are analyzed below. If Plaintiff wishes to try to assert similar claims against

1    Defendants Katavich, Vasquez, and Kiebler, the same standards and analysis apply.

2         The treatment a prisoner receives in prison and the conditions under which the
3    prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits
4    cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31, (1993); Farmer
5    v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and
6    idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v.
7    Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and
8    restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison
9    officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and
10   personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison
11   official violates the Eighth Amendment only when two requirements are met: (1) objectively,
12   the official's act or omission must be so serious such that it results in the denial of the
13   minimal civilized measure of life's necessities; and (2) subjectively, the prison official must
14   have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511
15   U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a
16   "sufficiently culpable mind." See id.

17        "To sustain an Eighth Amendment claim, the plaintiff must prove a denial of 'the
18   minimal civilized measure of life's necessities,' occurring through 'deliberate indifference'
19   by prison personnel or officers."  Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)
20   (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981), Wilson v. Seiter, 501 U.S. 294,
21   302-03 (1991)). However, temporary unconstitutional conditions of confinement do not rise
22   to the level of constitutional violations.  See Anderson v. County of Kern, 45 F.3d 1310 (9th
23   Cir. 1995).

24        As noted, Plaintiff's only claim which does not defectively allege supervisory liability
25   is against Defendant Contreras.  Plaintiff alleges Defendant Contreras denied him access

26

27

28

to hot water for seven days.  He does not allege the denial was a result of deliberate indifference or some more offensive motive.

Moreover, such a temporary and de minimis hardship does not rise to the level of a constitutional violation.  Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries.  See, e.g., Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (Eighth Amendment excludes from constitutional recognition de minimis uses of force); Anderson v. County of Kern, 45 F.3d 1310, 1314-15 (9th Cir. 1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); Hernandez v. Denton, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without mattress for one night is insufficient to state 8th Amendment violation and no amendment can alter that deficiency), judgment vacated on other grounds, 493 U.S. 801 (1989); Holloway v. Gunnell, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no water).

If Defendants Katavich, Vasquez, and Kiebler were personally aware of the alleged deprivations, not just supervising others who were aware, a claim against them could be of greater constitutional concern because the alleged deprivations attributed to them continued longer and were more severe than hot water deprivation.  If Plaintiff wishes to try to proceed against Defendants Katavich, Vasquez, and Kiebler, he must show how they personally participated in or were deliberately indifferent to these deprivations.

At this time, Plaintiff has failed to state a claim against these Defendants for denial of necessities under the Eighth Amendment.  If Plaintiff chooses to file an amended complaint, he must provide more information to enable the Court to determine their role and to determine if the deprivations reached a constitutionally prohibited level.  He should explain how long they continued, how they affected him, and how they reached the level of denial of life's necessities.  Plaintiff must also explain how these Defendants had a "sufficiently culpable mind" and were directly aware of the deprivations and yet were

1  deliberately indifferent to them.

2                3.   Visitation Rights

3  _____Plaintiff also alleges that Defendant Kiebler wrongfully denied Plaintiff his visitation
4  rights.

5        Although being denied visits from close family members may sound cruel, prisoners
6  do not have a due process or Eighth Amendment constitutional right to visitation rights.
7  See generally Ky. Dep't of Corr. v. Thompson, 490 U.S. 454 (1989) (considering the denial
8  of visitation rights under the Due Process Clause of the Fourteenth Amendment); Keenan
9  v. Hall, 83 F.3d 1083 (9th Cir. 1996) (considering the denial of visitation rights under the
10  Eight Amendment). "[T]here is no constitutional right of 'access to a particular visitor.'"
11  Keenan, 83 F.3d at 1092 (quoting Ky. Dep't of Corr., 490 U.S. at 460–61).

12        Plaintiff has failed to state a claim against Defendant Keibler in this regard.
13  Because the law does not recognize such a claim, amendment would be futile and Plaintiff
14  will not be given leave to amend this claim.

15        **C.   Due Process - Right to Privacy**

16  _____Plaintiff has alleged that Defendant Acala, Plaintiff's counselor, discussed Plaintiff's
17  information with a third party, without a waiver from Plaintiff.

18  _____The Supreme Court recognizes a constitutional right to privacy regarding "the
19  individual interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S.
20  589, 599 (1977). In Whalen, the Court did not define the boundaries of this right, or hold
21  that there is a constitutional right to privacy for medical records, however. Rather, it held
22  that, insofar as there is such a right, it was not impacted by a New York law requiring
23  physicians to disclose identifying information for individuals prescribed certain controlled
24  substances. Id. at 605. The Supreme Court's most recent discussion on the issue; NASA
25  v. Nelson, ___ U.S. ___, 131 S.Ct. 746 (2011), explicitly "assume[d], without deciding" that
26  the Constitution protects such a right, but expressly declined to consider its extent. Id. at
27  751. The Court noted that it had announced that such a right existed in Whalen, but had

28

1  said virtually nothing on the matter in the more than 30 years since.  See id. at 751, 756

2  (citing Whalen, 429 U.S. at 599–600 (1977), and Nixon v. Admin. of Gen. Servs., 433 U.S.

3  425, 457 (1977)).  Declining to articulate the scope of such a right, the Court ruled that the

4  plaintiffs' claims for invasion of privacy failed on other grounds.  Id. at 762–64.

5  _____Courts have generally found that prisoners' rights to informational privacy in their

6  medical records, if any, arise under the Fourteenth Amendment.  See Seaton v. Mayberg,

7  610 F.3d 530, 537–39 (9th Cir. 2010) cert. denied, ___ U.S. ___, 131 S.Ct. 1534 (2011)

8  (recognizing an inmate's limited right to informational privacy of medical records under the

9  Fourteenth rather than the Fourth Amendment); see also Birks v. Terhune, 398 Fed. App'x

10  308, 309 (9th Cir .2010) (affirming dismissal of prisoner's claim that a prison official

11  breached a duty of medical confidentiality, stating "prisoner's privacy interest in medical

12  treatment information yields to prisons' interest in maintaining security") (citing Seaton, 610

13  F.3d at 534–35); Powell v. Schriver, 175 F.3d 107 (2d Cir. 1999).  The Court therefore

14  construes Plaintiff's claim against Defendant Acala as raised under the Fourteenth

15  Amendment.

16  _____In Seaton, the court held that an inmate had no privacy right in preventing the

17  disclosure of his mental health records to the district attorney's office, when the State

18  sought the inmate's commitment under California's Sexually Violent Predator Act. 610 F.3d

19  at 541.  The court stated that, to the extent an inmate's medical records are disclosed

20  "while he [is] in prison serving his sentence" and the disclosure was "for a penological

21  purpose relating to his imprisonment," any "privacy right he has may be overridden for

22  legitimate penological reasons."  Id. Examples of such "substantial" penological interests

23  are a prison's need "to protect prison staff and other prisoners from communicable

24  diseases and violence, and to manage rehabilitative efforts."  Id. at 535.

25  Plaintiff fails to state a claim against Defendant Acala for a violation for his privacy

26  right under the Fourteenth Amendment.  Although it appears that prisoners are entitled to

27  a certain amount of privacy in their medical records, Plaintiff has failed to provide enough

28

information for the Court to determine whether he has stated a claim for a violation of this right.  Plaintiff does not explain what kind of counselor Defendant Acala happens to be, what information was disclosed, to whom it was disclosed, how Plaintiff is aware it was disclosed, and whether or not Defendant Acala had a legitimate penological reason for disclosing the information when he or she disclosed it.  Plaintiff will be given leave to amend this claim.

### D. Inadequate Medical Care

Plaintiff alleges that he suffered from inadequate medical care because Defendant Salas turned Plaintiff away from the medical office even though he or she knew Plaintiff had an appointment.  Plaintiff also alleges he suffered inadequate medical care when Defendant Blanco would not allow him to fill out forms to see a doctor and told him to "man up" rather than see a doctor.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106  (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference

1  could be drawn that a substantial risk of serious harm exists,' but that person 'must also

2  draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct.

3  1970 (1994)).  "'If a prison official should have been aware of the risk, but was not, then

4  the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id.

5  (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

6       Plaintiff has not pled a serious medical condition.  He has not explained what kind

7  of medical ailment he was suffering from.  He does not say when he was denied treatment

8  by Defendant Salas.  He does not say if he received any treatment when he interacted with

9  Defendant Blanco.  Plaintiff does not explain the outcome of either incident.  If Plaintiff

10 chooses to amend, he must fully explain what medical ailment he was suffering from during

11 both incidents, when they occurred, and what treatment, if any, he received.

12      Plaintiff also has not pled the second element of a claim for inadequate medical

13 care.  He only alleges that Defendants Salas and Blanco served as barriers to adequate

14 medical care.  He does not say if he informed these Defendants of his ailments, or if they

15 were aware that preventing him from seeing a doctor created a risk of a substantial harm

16 to Plaintiff.

17      Plaintiff has failed to state claim for inadequate medical care under the Eighth

18 Amendment, and will be given leave to amend this claim.  In his amended complaint,

19 Plaintiff must properly allege facts showing that he had a serious medical condition and if

20 and how any individual acted in a way that demonstrated deliberate indifference to it.

21      **E.    Claims Against CDCR**

22      Plaintiff alleges that Defendant California Department of Corrections ("CDCR")

23 violated his constitutional rights by failing to propery train their staff.

24      However, the Eleventh Amendment prohibits suits against state agencies.  See

25 Natural Res. Def. Council v. California Dep't of Transp., 96 F.3d 420, 421 (9th Cir. 1996);

26 Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th 1991); Taylor v.

27 List, 880 F.2d 1040, 1045 (9th Cir. Cir. 1989) (concluding that Nevada Department of

28

1  Prisons was a state agency entitled to Eleventh Amendment immunity); Mitchell v. Los

2  Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1989).  Defendant CDCR

3  is a state agency, and as a state agency, it is entitled to Eleventh Amendment immunity

4  from suit.  Because this Defendant is immune from suit, Plaintiff cannot recover from it.

5          If Plaintiff chooses to file an amended complaint, he should omit CDCR as a

6  Defendant.

7          **E.      Retaliation Claim**

8          It appears Plaintiff is claiming that Defendants Blanco and Rivera retaliated against

9  him for pursuing his constitutional rights.  He  alleges that Defendant Rivera threatened to

10  take away Hispanic inmates' right to have a designated porter-worker position if Plaintiff

11  complained about not receiving lunch on a certain day.   Plaintiff also alleges that

12  Defendant Blanco threatened to keep him in a certain location longer if Plaintiff tried to see

13  a doctor on a certain date.

14          "Within the prison context, a viable claim of First Amendment retaliation entails five

15  basic elements: (1) An assertion that a state actor took some adverse action against an

16  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

17  the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

18  advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th

19  Cir. 2005).

20          Plaintiff described the adverse actions as Defendant Blanco threatening to detain

21  him and Defendant Rivera threatening to take away a job allocation.  Plaintiff does not

22  explain where or why Defendant Blanco allegedly threatened him or what Defendant Rivera

23  threatened Plaintiff with.  The Court cannot determine if the acts constituted an adverse

24  action

25          The second element of a prisoner retaliation claim focuses on causation and motive.

26  See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his

27  protected conduct was a "'substantial' or 'motivating' factor behind the defendant's

28

1   conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.

2   1989).  Although it can be difficult to establish the motive or intent of the defendant, a

3   plaintiff may rely on circumstantial evidence.  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir.

4   2003) (finding that a prisoner established a triable issue of fact regarding prison officials'

5   retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines

6   v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th

7   Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory

8   intent").  Plaintiff relies on circumstantial evidence to plead that these Defendants took

9   adverse actions as a result of his pursuing a protected conduct.  Plaintiff satisfies this

10  prong since Defendants took their allegedly adverse actions against Plaintiff at the same

11  time as he was trying to obtain medical services and when he was trying to complain about

12  not receiving his lunch.

13        Filing a grievance is protected action under the First Amendment.  Valandingham

14  v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  Pursuing a civil rights legal action is

15  also protected under the First Amendment.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.

16  1985).  Plaintiff has not alleged that he was engaged in conduct that was protected under

17  the First Amendment.  He simply says he was pursuing medical treatment when Defendant

18  Blanco allegedly threatened him; that is not protected conduct under the First Amendment.

19  As to Defendant Rivera, a negative response to complaints about lack of lunch does not

20  constitute protected conduct under the First Amendment for retaliation purposes.  Plaintiff

21  has not satisfied this prong for either Defendant.

22        With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape

23  liability for a First Amendment violation merely because an unusually determined plaintiff

24  persists in his protected activity...."  Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d

25  1283, 1300 (9th Cir. 1999).  The correct inquiry is to determine whether an official's acts

26  would chill or silence a person of ordinary firmness from future First Amendment activities.

27  Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).  Plaintiff has

28

failed to satisfy the fourth prong because the actions he has alleged so far appear to be innocuous and would not chill a person of ordinary firmness from future First Amendment activities.

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. Though this is not a high burden, see id. (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry), Plaintiff has not alleged facts to show that Defendants Blanco or Rivera had no legitimate penological motivation for their actions. Plaintiff has failed to describe the circumstances of the events at issue in enough detail for the Court to determine whether there was a legitimate penological objective.  The Court cannot determine if Plaintiff has satisfied the fifth prong of a retaliation claim.

Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his retaliation claim, the Court finds that he has failed to state a claim upon which relief could be granted.  Plaintiff will be given leave to amend this claim and is required to show how all five prongs required for a retaliation claim have been met.

### F.    Due Process - Grievance Process

Plaintiff alleges that Defendant Amacer questioned why Plaintiff and other inmates continued to file 602s which ended up in the trash.

#### 1.    Linkage Requirement

Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

The statute clearly requires that there be an actual connection or link between the

1   actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.

2   See Monell v. Department of Social Services, 436 U.S. 658 (1978).  Government officials

3   may not be held liable for the actions of their subordinates under a theory of respondeat

4   superior. Iqbal, 129 S.Ct. at 1948.  Since a government official cannot be held liable under

5   a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing

6   that the official has violated the Constitution through his own individual actions.  Id. at

7   1948.  In other words, to state a claim for relief under § 1983, Plaintiff must link each

8   named defendant with some affirmative act or omission that demonstrates a violation of

9   Plaintiff's federal rights.

10      Plaintiff has not linked Defendant Amacer to any affirmative act or omission that

11  could constitute a violation of Plaintiff's federal rights.  Plaintiff only alleges that Defendant

12  Amacer informed him the prison grievance process was futile.  Such advice whether right

13  or wrong or even if motivated by ill will, does violate a constitutional  rights.  If Plaintiff

14  chooses to file an amended complaint, he must explain what action Defendant Amacer

15  took that violated Plaintiff's rights and apply the standards below to determine if it would

16  even be possible to state a claim against Defendant Amacer .

17              2.    Due Process Analysis

18      The Due Process Clause protects prisoners from being deprived of liberty without

19  due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a

20  cause of action for deprivation of due process, a plaintiff must first establish the existence

21  of a liberty interest for which the protection is sought.  Liberty interests may arise from the

22  Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68

23  (1983).  Liberty interests created by state law are generally limited to freedom from

24  restraint which "imposes atypical and significant hardship on the inmate in relation to the

25  ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).

26      In Mann v. Adams, 855 F.2d 639 (9th Cir. 1988), the Ninth Circuit held that a

27  prisoner does not have a claim of entitlement to a grievance procedure. 855 F.2d at 640.

28

This was reiterated in <u>Ramirez v. Galarza</u>, 334 F.3d 850 (9th Cir. 2003), when the Ninth Circuit observed that inmates do not have a separate constitutional entitlement to a grievance procedure. Thus, the case law is clear that Plaintiff is not entitled, as a matter of federal law, to a particular grievance procedure.

Plaintiff has a First Amendment right to file prison grievances but does not have a right to any particular response. <u>Johnson v. Subia</u>, 20010 WL 3767732, *2 n. 3 (E.D. Cal. Sept. 22, 2010).

Plaintiff has not alleged whether or not he denied the opportunity to file his grievances. If Plaintiff chooses to file an amended complaint, he should explain truthfully whether or not he was given an opportunity to file grievances.

## IV. <u>CONCLUSION AND ORDER</u>

Plaintiff's Complaint fails to state a claim upon which relief may be granted under § 1983. The Court will provide Plaintiff with the opportunity to amend to cure the deficiencies in his claim. <u>Lopez</u>, 203 F.3d at 1130; <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, <u>Iqbal</u>, S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the prior complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." <u>King</u>, 814 F.2d at

1   567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord

2   Forsyth, 114 F.3d at 1474.

3          Accordingly, it is HEREBY ORDERED that:

4      1.   The Clerk's Office shall send Plaintiff a complaint form;

5      2.   Plaintiff's complaint, filed June 9, 2011, is dismissed for failure to state a

6           claim upon which relief may be granted under § 1983;

7      3.   Within **thirty (30) days** from the date of service of this order, Plaintiff shall

8           file an amended complaint; and

9      4.   If Plaintiff fails to file an amended complaint in compliance with this order,

10          this action will be dismissed, with prejudice, for failure to state a claim.

11

12  IT IS SO ORDERED.

13  Dated:    February 14, 2012          /s/ *Michael J. Seng*
    ci4d6                              UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28